**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

U.S. ENERGY RESOURCES, LLC,

    Plaintiff,

v.

                                                      Civil Action No. 11-CV-11185-DT
                                                      Honorable Denise Page Hood

HALON OIL BROKERS, LLC, RANDY
WEGNER, SPIRE BRANDS, LLC,
RODNEY KAMINGA, FIFTH THIRD
FINANCIAL CORPORATION d/b/a
FIFTH THIRD BANK,

    Defendants.
_____/

**AMENDED ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION**

**I.    BACKGROUND**

The Court entered an Order granting in part and denying in part Plaintiff U.S. Energy Resources, LLC's ("U.S. Energy") Motion for Temporary Restraining Order on March 25, 2011. A hearing date was set for April 11, 2011 on U.S. Energy's Motion for Preliminary Injunction which was adjourned at U.S. Energy's request and rescheduled for April 26, 2011. No response was filed to the Motion for Preliminary Injunction and no one appeared at the hearing to oppose the motion. For the reasons set forth below and on the record, the Court grants the Motion for Preliminary Injunction.

On March 23, 2011, U.S. Energy filed a Verified Complaint against Defendants Halon Oil Brokers, LLC ("Halon Oil"), Randy Wegner ("Wegner"), Spire Brands, LLC ("Spire Brands"), Rodney Kaminga ("Kaminga") and Fifth Third Financial Corporation d/b/a Fifth Third Bank ("Fifth

Third") alleging: 1) Fraud/Silent Fraud/Fraudulent Concealment Against All Defendants Except Fifth Third (Count I); 2) Civil Conspiracy Against All Defendants Except Fifth Third (Count II); 3) Declaratory/Equitable Relief/Interpleader (Count III); Breach of Contract Against All Defendants Except Fifth Third (Count IV); Promissory Estoppel Against All Defendants Except Fifth Third (Count V); Unjust Enrichment Against All Defendants Except Fifth Third (Count VI); and, Common Law and Statutory Conversion/Treble Damages Against All Defendants Except Fifth Third (Count VII).

U.S. Energy is in the business of marketing and selling oil and other petroleum based products with its principal place of business in Detroit, Michigan. (Comp., ¶ 1) In January 2011, U.S. Energy was seeking a private label motor oil packaging service company. (Comp., ¶ 16) After searching on the internet, U.S. Energy contacted Wegner, conducting business under the entity Spire Brands, regarding providing the packaging services to U.S. Brand. (Comp., ¶¶ 14, 17) Wegner made several visits to Detroit to meet with U.S. Energy representatives. (Comp., ¶ 18) Wegner represented to U.S. Energy that he was an expert in packaging services and that he had several contacts in the oil and petroleum products industry. (Comp., ¶¶ 19-21) Wegner coordinated conference calls between U.S. Energy and Halon Oil's representative, Christopher Woodworth to obtain oil for U.S. Energy's motor oil packaging business. (Comp., ¶¶ 21-25) U.S. Energy later discovered that Woodworth was a fictitious name being used by Wegner's business associate, Kaminga. (Comp., ¶ 23)

After discussions between U.S. Energy, Wegner and Woodworth (Kaminga), an oral agreement was entered into between U.S. Energy and Woodworth (Kaminga) for Halon Oil on February 15, 2011. (Comp., ¶ 26) The agreement was that Halon Oil would supply to U.S. Energy

2

with 35,000 gallons of various grades of motor oil and 1,000 gallons of transmission fluid for a total of $102,660. (Comp, ¶ 26) An invoice no. 17365 was submitted to U.S. Energy for the purchase of the motor oil and transmission fluid and U.S. Energy wired funds totaling $79,200 to a Fifth Third bank account, which U.S. Energy believed was Halon Oil's account. (Comp., ¶ 27) U.S. Energy later discovered that Kaminga had opened the Fifth Third account prior to the wire transfer, representing to Fifth Third that he was an authorized representative of Halon Oil. (Comp., ¶ 28) Pursuant to invoice no. 17377, U.S. Energy wired another $23,460 to the Fifth Third account on March 2, 2011. (Comp., ¶ 29) U.S. Energy also paid $6,813.36 for quart bottles and caps, an additional $3,3890 for labels, all of which Wegner represented to U.S. Energy would be used to package the 34,500 gallons of motor oil U.S. Energy purchased from Halon Oil. (Comp., ¶ 30)

After the second wire transfer on March 2, 2011, U.S. Energy contacted Wegner to inquire as to the status and progress of Wegner's packaging of the oil and was told by Wegner that he received all the loads of oil from Halon Oil paid for by U.S. Energy. (Comp., ¶¶ 32-33) Wegner provided U.S. Energy with copies of invoice and shipping documents for one load and also an invoice indicating that Halon Oil purchased the oil from ExxonMobil Oil Corporation. (Comp., ¶¶ 34-35) U.S. Energy later demanded copies of the invoices and shipping documents for the remaining loads but Wegner avoided U.S. Energy's telephone calls. (Comp., ¶ 36) U.S. Energy made telephone calls to Halon Oil, ExxonMobil and to Schneider Transport, a shipping company, only to be advised that the whole transaction did not occur and that the shipping documents were fake. (Comp., ¶ 36) U.S. Energy representatives traveled to an address set forth on the Halon Oil invoices received by U.S. Energy, only to find that the address and phone numbers were fictitious. (Comp., ¶ 37) The address was a residence owned by Kaminga and not a commercial facility.

3

(Comp., ¶ 38)

U.S. Energy informed the various local police authorities in Illinois, Indiana and Michigan about the alleged fraud by Wegner and Kaminga, which prompted Fifth Third to place a hold on the bank account opened by Kaminga. (Comp., ¶¶ 41, 43) U.S. Energy was informed by Fifth Third that $44,000 had been withdrawn from the account but that $58,000 remained in the account. (Comp., ¶ 43) U.S. Energy filed the instant suit on March 24, 2011 seeking to void the transaction, a return of the money, a return of the bottles and other items given to Wegner, damages and costs. (Comp., ¶¶ 67, 73, 84, 88, 95, 99) U.S. Energy seeks an order enjoining Fifth Third from transferring the assets to any of the Defendants and to recall any checks or wire transfers Kaminga caused Fifth Third to make from the account. (Comp., ¶ 77G. & H.)

The Court's Temporary Restraining Order enjoined Halon Oil, Wegner, Spire Brands and Kaminga from transferring, disposing, withdrawing, issuing checks, or otherwise dissipating the assets located in a Fifth Third bank account. (3/24/2011 TRO, p. 9) The preliminary injunction motion seeks to enjoin these Defendants from access to the account until this matter is resolved. The Court allowed U.S. Energy to serve Kaminga, Halon Oil, Wegner and Spire Brands by certified mail, return receipt requested, first class mail and email, which occurred on April 7, 2011. (Certificate of Service, Doc. No. 12) U.S. Energy filed Certificates of Service which indicated that the Summons were returned executed as to these Defendants. (Doc. Nos. 13, 14, 15, 16)

**II.     ANALYSIS**

    **A.     Preliminary Injunction Standard**

Four factors must be balanced and considered before the Court may issue a preliminary

injunction pursuant to Rule 65(a) of the Rules of Civil Procedures:  1) the likelihood of the plaintiff's success on the merits; 2) whether plaintiff will suffer irreparable injury without the injunction; 3) the harm to others which will occur if the injunction is granted; and 4) whether the injunction would serve the public interest.  *In re Delorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985); *In re Eagle-Pitcher Industries, Inc.*, 963 F.2d 855, 858 (6th Cir. 1992); and *N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162, 166 (6th Cir. 1989).

### B.     First Factor-Likelihood of Success on the Merits

The Verified Complaint and the Verified Motion for Preliminary Injunction assert fraudulent misrepresentations by Wegner and Kaminga which induced U.S. Energy to enter into an agreement to purchase oil from Kaminga, pretending to be Woodworth.  A verified complaint has the same force and effect as an affidavit for purposes of a motion.  *Lavado v. Keohane,* 992 F.2d 601, 605 (6th Cir. 1993). U.S. Energy seeks rescission of the agreement based on fraudulent misrepresentations and/or material breach of the agreement.  In Michigan, to warrant the equitable relief of rescission, the material breach must affect a substantial or essential part of the contract or involve a misrepresentation that was made with intent to deceive or mislead.  *Omnincon of Michigan v. Giannetti Investment Co.,* 221 Mich. App. 98, 102 (1995).  Rescission annuls the contract *ab initio* and restores the parties to their original positions.  *Lash v. Allstate Ins. Co.,* 210 Mich. App. 98, 102 (1995).

U.S. Energy has set forth sufficient facts in its Verified Complaint to show that Wegner and Kaminga fraudulently misrepresented the essential substance of the agreement entered into with U.S. Energy.  U.S. Energy has sufficiently alleged and submitted evidence to specifically identify the funds originating from U.S. Energy to Fifth Third as payment towards the agreement.  The Court

finds U.S. Energy will likely succeed on the merits of its case against these Defendants. However, as to Fifth Third Bank, the only allegations against it is that it holds the funds at issue. There is no substantive allegation against Fifth Third Bank to form a claim or cause of action against it.

### C.     Second Factor/Irreparable Harm

Addressing the irreparable injury requirement, it is well settled that a plaintiff's harm is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). However, an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate. *Id.* at 511-512. The Supreme Court addressed the issue of whether a district court has the authority to issue a preliminary injunction under Rule 65 for the purposes of protecting assets in anticipation of the judgment of the court. In *Grupo Mexicano de Desarrolo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), the Supreme Court held that the district court had no authority to issue a preliminary injunction preventing a defendant from disposing of assets pending adjudication of a plaintiff's claim for monetary damages. *Id.* at 333. The *Grupo Mexicano* case involved a breach of contract claim for money damages by unsecured creditors of a group of investors who purchased notes involving a toll road construction. The Supreme Court recognized the case of the usual preliminary injunction where a plaintiff seeks to enjoin, pending the outcome of the litigation, an "action" that a plaintiff claims is unlawful. *Id.* at 314. The Supreme Court noted the difference between that injunctive relief and a preliminary injunction to protect an anticipated judgment of the court. *Id.* at 315. The Supreme Court stated that if a district court enters a preliminary injunction to protect assets in anticipation of a judgment of the court, as opposed to enjoining an "act" by the defendant, the defendant is harmed by the issuance of the unauthorized preliminary injunction. *Id.* at 315. An

unsecured creditor has no rights at law or in equity in the property of the debtor prior to judgment. *Id.* at 330. The only cases where an unsecured creditor can obtain preliminary injunctive relief to prevent a defendant from disposing of assets pre-judgment include situations where statutes permit the court to do so, such as in a bankruptcy action, or under the Securities Act, or under statutes authorizing tax injunctions. *Id.* at 326-328. Traditionally, courts of equity have not interfered with the debtor's disposition of his/her property at the instance of a nonjudgment creditor. *Id.* at 329. A creditor must first obtain a judgment because a debtor has a right to a jury trial on the legal claim. *Id.* at 330. The Supreme Court noted that any prejudgment remedy may be sought under Fed.R.Civ.P. 64 which authorizes use of prejudgment remedies available under State law. *Id.* at 330-331.

In *Grupo Mexicano,* the Supreme Court answered the narrower question of "whether, in an action for money damages, a United States District Court has the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed." *Id.* at 310. The Supreme Court reasoned that historically, a court of equity could not issue such provisional relief in the context of an action for money damages. *Id.* at 320-21 (noting the "general rule that a judgment establishing the debt was necessary before a court of equity would interfere with the debtor's use of his property"). The Supreme Court struck down the injunction issued by the lower court. *Id.* at 333. The Supreme Court, however, distinguished cases in which a plaintiff seeks equitable relief. *Id.* at 324-25. *See e.g., Deckert v. Independence Shares Corp.,* 311 U.S. 282, 290 (1940) (upholding a preliminary injunction that prevented a party from transferring assets as "a reasonable measure to preserve the status quo pending final determination of the questions raised by the bill" where the complaint stated claims for equitable relief (namely,

rescission of contract and restitution)). The Supreme Court stated that *Deckert* was distinguishable from *Grupo Mexicano* because, as the Supreme Court took pains to explain, "the bill stated a cause [of action] for equitable relief." The preliminary relief available in a suit seeking equitable relief has nothing to do with the preliminary relief available to a creditor's bill seeking equitable assistance in the collection of a legal debt. *Id.* at 325 (quoting *Deckert,* 311 U.S. at 288).

U.S. Energy seeks relief both in money damages and equitable relief in the form rescission of the transaction with Wegner and Kaminga (in the misrepresentation count, Count I of the Complaint). (Comp., pp. 13-14, ¶¶ A.B.) Pursuant to *Grupo Mexicano,* this Court cannot issue the injunction based on U.S. Energy's claims for money damages. However, as to the equitable relief sought by U.S. Energy, the Court is able to issue an injunction as to these assets to maintain the *status quo*. Courts have held that in order to issue an order maintaining the *status quo* and freezing certain assets, the court must have sufficient evidence to show a threat that an individual will dissipate the assets. *See United States v. Oncology Associates, P.C.,* 198 F.3d 489, 496 (4th Cir. 1999); *Newby v. Enron Corporation,* 188 F. Supp. 2d 684, 707-08 (S.D. Tex. 2002). The Court will grant the preliminary injunction pending resolution of this case to maintain the *status quo*.

### D. Third and Fourth Factors/Harm to Others and Public Interest

Regarding the third and fourth factors, although the Defendants may be harmed in that they will be unable to access the moneys held by Fifth Third Bank, given the alleged fraud in this case, Defendants may not be entitled to the funds in the account. Other than Defendants, no one else will be harmed from enjoining access to the funds. There is no public interest in accessing funds which may have been obtained fraudulently.

### E. Weighing the Factors

Weighing the four factors noted above, a preliminary injunction is issued in this matter enjoining Halon Oil, Wegner, Spire Brands and Kaminga from accessing the assets in the Fifth Third account and from dissipating any further assets connected to the transactions with U.S. Energy.

### III.  CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Preliminary Injunction is granted.

IT IS HEREBY ORDERED that:

A. Plaintiffs' Motion for Preliminary Injunction **(Doc. No. 3, filed 3/23/2011)** is GRANTED pursuant to Fed. R. Civ. P. 65(a).

B. Defendants Halon Oil, Randy Wegner, Spire Brands, and Rodney Kaminga and their agents are enjoined and prohibited from transferring, disposing, withdrawing, issuing checks, or otherwise dissipating the assets located in a Fifth Third bank account, ABA # 042000314, Account Name: Halon Oil Brokers LLC, Account No. (Blank), which account was opened at a Fifth Third office in Wheaton, Illinois.

C. Defendant Fifth Third Bank must not allow Defendants named above from accessing said account.

D. The security bond remains at $1,000.00.

**SO ORDERED.**

                                                s/Denise Page Hood
                                                Denise Page Hood
                                                United States District Judge

Dated:  May 25, 2011

   I hereby certify that a copy of the foregoing document was served upon counsel of record on May 25, 2011, by electronic and/or ordinary mail.

               <u>s/LaShawn R. Saulsberry</u>
               Case Manager